Zinc Co. v. Freeman.

EMPIRE ZINC COMPANY, Respondent, v. J. W. FREEMAN, Appellant.

Kansas City Court of Appeals, May 16, 1898.

Mines and Mining: CONTRACT: OWNERSHIP OF ORES. Under the rule governing plaintiff's mines, which constitute a part of the contract between plaintiff and its miners, the ore mined was the property of the plaintiff and replevin will lie for possession thereof against the miners.

*Appeal from the Jasper Circuit Court.*—HON. J. D. PERKINS, Judge.

AFFIRMED.

STATEMENT, BY ELLISON, J.

The following are the rules referred to in the opinion:

"MINING RULES AND REGULATIONS OF THE EAGLE LAND OF THE EMPIRE ZINC COMPANY.

"In accordance with the provisions of the Revised Statutes of the state of Missouri, the Empire Zinc Company does hereby make and publish the terms and requirements upon which mining will be permitted on the following lands owned and controlled by it, to wit: The west half of the southwest quarter of section fifteen (15), and the west half of the southeast quarter, and the southeast quarter of the southeast quarter of section sixteen (16), all in township twenty-seven (27), range thirty-three (33), Jasper county, Missouri.

"1.   Said company will keep at its office in Joplin, Missouri, a register of all mining lots on said land, and containing a copy of these rules and regulations, and no person shall be permitted to prospect or mine on said land until he shall, with the consent of the superintendent, select a mining lot or lots, and sign such

register designating the same, thereby subscribing to the rules and regulations therein contained.

"2. Work shall be commenced within two (2) days after registering, and shall thereafter be carried on continuously, in good faith, and in a good, miner-like manner. Work shall not be suspended at any time except on written permission of superintendent of mines, which will only be given for causes by him deemed sufficient.

"3. All openings must be kept properly and safely timbered, and all work must be done in a safe, workmanlike and skillful manner. The company, its officers and agents, shall at all times have free access to all of said land and lots, both above and below ground.

"4. No interest in lands or ores therein shall be acquired, held or claimed, or in anywise affected by any person mining on said land, by reason of register-ing, mining or working thereon or therein, and all shafts and drifts therein with the timbers supporting the same shall belong to this company, and persons sinking or cutting the same shall have no interest therein except the use thereof, under the terms hereof, so long as the same are complied with and no longer.

"5. All ores mined on said land shall be cleaned and prepared for market thereon by the persons mining the same, and when so cleaned shall be turned in to the company. Said company will receive the same and will pay to the persons having mined the same, as full compensation for all labor performed and expense incurred in searching for, mining and cleaning the same, as follows: For lead ore the market value, less 20 per cent; for zinc ore the market value, less 20 per cent. In all cases, however, where the company's pumps drain the ground, an additional five per cent shall be deducted for both lead and zinc ores.

"6.   All ore shall be weighed on the land and on the company's scales, which shall govern weights.

"7.   No rough ore, crush stuff, tailings or other product of the mines shall be sold or removed from the land without the written consent of the company.

"8.   No mining claim, right or license on said land or any interest in such claim, right or license, shall be sold, transferred, assigned or sub-let, without the written consent of this company, entered on its mining register, and any such sale, assignment, transfer or sub-letting, without such written consent, shall forfeit all rights, interests and claims as against all parties to the transaction.

"9.   No minerals or ores from other lands shall be brought on this company's land without written permission, and no ores or minerals shall in any event be removed from said company's land and washed, cleaned or sold elsewhere.

"10.   This company reserves and shall have the right to regulate the location of shafts, machinery and improvements, to occupy such lots or parts of lots as are required for company use in locating company machinery, etc., to regulate the piling of waste, to control and regulate wash places, and generally to give such directions about mining and the management of the business as it may deem proper.

"11.   The right to prospect and mine in accordance with the provisions and terms hereof shall expire and terminate on the 31st day of December in each year, but may be renewed from year to year, or from time to time, by the written consent of the company entered in the register, in case the mining superintendent deems it proper to give such consent.

"12.   None of the provisions herein contained shall be changed, modified, suspended or otherwise affected, nor any requirements waived, or rights

relinquished, except and only by instrument in writing, signed by the president, general manager, or mining superintendent.

"13. The violation of any of the foregoing rules or regulations, or failure to observe and perform any of the provisions or requirements hereof, shall immediately terminate all rights of the person or persons so violating and failing to keep and perform the same, to further occupy, prospect or mine said land, or the lot or lots mined by them, and this company may at once take possession of such lot or lots, with all shafts or drifts therein, without notice or written demand, and may lawfully place other miners therein to work the same.                    "EMPIRE ZINC COMPANY,

"DANIEL DWYER,           "By W. C. WETHERILL,
   "Superintendent of Mines.        "General Manager.
"Joplin, Mo., April 25th, 1889."

McANTIRE & CRAYCROFT for appellants.

The general rule is that the defendant in a replevin suit may recover the property against the general owner, where he has an interest in the property itself. Dively was a joint owner and he and Freeman were entitled to all the ore that was mined therefrom, less twenty per cent royalty. Under such conditions of facts plaintiffs can not recover. Gassett v. Drydale, 48 Mo. App. 430. The general rule is that plaintiff must recover on the strength of his own title and be entitled to the immediate and exclusive possession of the property replevied. Gray v. Parker, 38 Mo. 160; Garlside v. Nixon, 43 Mo. 138. The defendant had an interest in the ore itself, not as owner, but to its possession until eighty per cent of its value was paid. Nettleton v. Jackson, 30 Mo. App. 133.

GALEN and A. E. SPENCER for respondent.

(1) Respondent had posted up printed rules and regulations governing mining on the land in question, and had opened and kept a mining register, as provided by these rules. These rules, and all the terms thereof, were binding on the appellant. R. S. 1889, sec. 7034; Garvey v. Gunther, 51 Mo. App. 545.

ELLISON, J.—This is an action of replevin for a lot of zinc ore. The court gave a peremptory instruction for plaintiff and defendant appeals. Plaintiff was the owner of the land from which the ore was taken. The land was divided off into mining lots and plaintiff permitted mining thereon by those who would subscribe to the mining rules (set forth at another place) which had been adopted and posted as authorized by section 7034, Revised Statutes 1889.

The rules adopted and posted by plaintiff became a part of the contract between plaintiff and anyone mining plaintiff's land. Garvey v. Gunther, 51 Mo. App. 545. Under those rules the ore belonged to plaintiff, and the miners were to be paid eighty per cent of its value for the mining. It is that fact which makes inapplicable to the case much of defendant's contention here. That contention is that the miners were joint owners of the ore with plaintiff, and that therefore plaintiff could not maintain replevin against defendant. But we interpret rules four and five as placing the ownership of the ore in the plaintiff and the miners to be paid for services in mining, eighty per cent of its value. The result is that plaintiffs were entitled to recover and the court's peremptory instruction was not error.

The judgment is affirmed. All concur.